# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILE NO.: _____

| | |
|---|---|
| AUSTIN MONTGOMERY AND BRENT MORROW<br><br>Plaintiffs,<br>v.<br><br>EQT PRODUCTION COMPANY,<br><br>Defendant. | **CIVIL ACTION COMPLAINT**<br>Civil Action No. 1:13-cv-196 (Keeley)<br>Electronically Filed August 28, 2013<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

PLAINTIFFS, Austin Montgomery and Brent Morrow, by and through their attorneys, The Nemeroff Law Firm, P.C., hereby bring this Civil Action Complaint exercising their statutory right to a cause of action against Permittee EQT Production Company under §22-6-27 for a gas well explosion that injured Plaintiffs, whereof the following is a statement:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendant EQT Production Company because it is duly licensed to do business in the State of West Virginia and/or at all material times is and/or has been engaged in business in the State of West Virginia.

2. Further, this Court has diversity jurisdiction over the parties because the Plaintiffs are citizens of the State of Texas and the Defendant is a citizen of the State of Pennsylvania. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

3. Pursuant to 28 U.S.C A. §1391 (2), venue is proper in this judicial district

1

because a substantial part of the events or omissions occurred in West Virginia.

## PARTIES AND BACKGROUND

4. Plaintiffs, Austin Montgomery and Brent Morrow (hereinafter "Plaintiffs"), are citizens and residents of the State of Texas. Austin Montgomery is a citizen and resident of Johnson County, Texas. Brent Morrow is a citizen and resident of Somervell County, Texas.

5. Austin Montgomery ("Austin") and Brent Morrow ("Brent") bring this lawsuit against EQT Production Company for its role in causing an August 28, 2010 gas well explosion and fire that severely burned Austin and Brent, placing both of their young lives in danger. The tragic events that occurred on August 28 were both foreseeable and preventable had the Defendant acted reasonably and responsibly by providing a safe place to work. Austin and Brent, who were twenty-two and twenty-one-years-old, respectively, at the time of the explosion, were working as flowback employees for contractor BJ Services Company, USA ("BJ Services") at a gas well identified as the Oxford 127 Well Pad near West Union, West Virginia. The well premises was owned and operated by EQT Production Company ("EQT"), which also acted as the Permittee. In the weeks leading up to August 28, the site managers from both EQT and BJ Services had directed Austin, Brent, and another of co-worker to remove pools of liquid from the ground that they were told amounted to rainwater. Removing liquids from the ground of an active well site was neither part of Austin nor Brent's training nor tasks as flowback employees, although this was exactly what another company(ies), and its workers had been hired to do. On August 28, Austin, Brent, and another co-worker were directed to remove another pool of liquid between two frac tanks

2

using the gas-powered trash pump. Unbeknownst to Austin, Brent, or their co-workers, the pool of liquid they were removing contained a highly flammable substance known as condensate, which the gas-powered pump ignited, setting off an explosion and fire that quickly engulfed the area in which Austin and Brent were standing in flames. The fire quickly transformed Austin from a young energetic father and husband to be, into a coma patient in a hospital burn unit with extensive third-degree burns covering his body, and changed Brent from a healthy, vibrant young man into a burn victim with injuries so severe that he would require skin grafts to both legs.

6. In the months following his hospitalization, Austin fought to survive, and endured months of painful treatments. Now, Austin confronts the prospect of a different life than he had previously envisioned. Physically, his doctors have informed him that over a third of his body was permanently damaged by the fire and that the rest of his life will come with a list of significant physical limitations. Emotionally and psychologically, Austin is nervous and fearful about how he and his young family will cope with the trauma from his burns and their lasting reminders. Brent, meanwhile, has learned that he suffered permanent skin changes and loss of sensation in his lower extremities that have left him with permanent impairment. Perhaps the most terrible part for Austin and Brent is that they know that had EQT and other companies acted safely and responsibly, the companies could have altogether prevented this catastrophe.

7. Shortly after the explosion, both federal and state regulatory agencies initiated investigations into the explosion. The West Virginia Department of Environmental Quality ("WVDEQ") cited EQT for allowing condensate to flow out of condensate storage tanks ("frac tanks") onto its premises, which it found to present an imminent danger to both people

and the environment. EQT, itself, admitted in a letter to the WVDEQ that the condensate on the ground that burned Austin and Brent resulted from condensate tanks on EQT's premises being overfilled and splashing condensate onto the ground.

8. EQT Production Company ("EQT") is a foreign Pennsylvania corporation who is amenable to jurisdiction in the courts of West Virginia by virtue of its conduct or substantial and/or systematic business in West Virginia which subjects them to the jurisdiction of the West Virginia courts pursuant to the West Virginia Long-Arm Statute. EQT owns, operates, leases, and acts as a permittee pursuant to West Virginia Code 22-6-27 at numerous gas and/or oil sites throughout West Virginia where it is and has been actively engaged in drilling and exploration activities. EQT was the permittee for the Oxford 127 Well Pad in Doddridge County where the explosion outlined in Paragraph 5-7 occurred.

9. Other companies related to and responsible for Plaintiffs' injuries are not named herein only because they do not qualify as Permittees under West Virginia Code § 22-6-27.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

10. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

11. Austin Montgomery and Brent Morrow's injuries are a direct and proximate result of the negligence, recklessness, and willful disregard for safety of Defendant EQT (and others not herein because they are not subject to West Virginia's permittee statute, 22-6-27) in that, even though EQT knew, or, in the exercise of ordinary care, should have known, of the extreme fire

4

dangers associated with condensate and the presence of condensate backflow in a gas well operation, Defendant nonetheless:

    a.    Failed to advise Plaintiffs of the dangerous characteristics of condensate;

    b.    Failed or omitted to provide Plaintiffs with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment along with accurate information regarding the proper maintenance and care for such apparel or equipment;

    c.    Failed and omitted to place any warnings or sufficient warnings regarding condensate and the hazards of using gas-powered equipment in its vicinity;

    d.    Failed to equip on-site frac tanks with overflow or capacity alarms;

    e.    Inadequately warned, if, in fact, they warned at all, persons such as Plaintiffs of the potential fire dangers of condensate;

    f.    Did not recommend methods to improve the work environment;

    g.    Failed to provide a work environment free of combustible condensate;

    h.    Failed to establish a hot work zone in an area surrounding frac tanks;

    i.    Failed to warn or mandate the use of only spark-proof equipment or machinery near the frac tanks;

    j.    Failed to monitor frac tanks for overfilling, sloshing, or splashing potential;

    k.    Failed to connect overflow tanks to frac tanks;

    l.    Failed to provide Austin Montgomery with a personal combustible gas monitor;

    m.    Failed to inspect and test liquids covering portions of the ground on site before directing the liquids be cleaned up or removed;

    n.    Failed to investigate the premises for latent or patent defects;

      o.     Failed to take any measures to investigate, care for, or ensure the health of workers injured by dangerous conditions on the premises.

12. Defendant's negligence, recklessness and willful disregard for safety, as aforesaid, was a direct and proximate cause of Plaintiffs' injuries and damages, as set forth more fully below.

13. On August 31, 2010, the WVDEQ cited EQT for violating W. Va. Code 22-6-3 by allowing condensate to flow out of frac tanks on its premises, which it found to present an imminent danger to both people and the environment. The DEQ's finding constitutes a *prima facie* presumption that EQT was negligent *per se*.

14. Plaintiffs maintain this action against EQT under W.V. Code 22-6-27 for damages caused by explosions. Plaintiffs, as set forth in this complaint suffered personal injury due to an explosion caused by EQT, the permittee, and are granted a cause of action under the aforementioned code against EQT for three years after the explosion regardless of when the explosion occurred.

15. EQT, as permittee and premise owner, failed to provide a safe work site for Plaintiffs by identifying and properly removing hazardous condensate from the ground. Additionally, the actions of its site representative in directing Plaintiffs to remove hazardous liquids that EQT had not identified or properly controlled for with a ignition source pump directly or proximately caused and/or contributed to the explosion that injured plaintiffs. EQT knew or should have known that Plaintiffs were not equipped or trained for the removal of such unidentified and potentially hazardous liquids.

16. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
### PREMISES LIABILITY

17. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

18. Defendant owned and operated the Oxford Pad Facility, located near West Union, West Virginia, where Austin Montgomery and Brent Morrow were severely injured. Plaintiffs' injuries are a direct and proximate result of the negligence, recklessness, and willful disregard for safety of Defendant EQT in that, even though EQT knew, or, in the exercise of ordinary care, should have known, the existence of dangerous conditions on its land and of the extreme fire dangers associated with condensate and the presence of condensate backflow in a gas well operation, Defendant nonetheless:

    a. Failed to advise Plaintiffs of the dangerous characteristics of condensate;

    b. Failed or omitted to provide Plaintiffs with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment along with accurate information regarding the proper maintenance and care for such apparel or equipment;

    c. Failed and omitted to place any warnings or sufficient warnings regarding condensate and the hazards of using gas-powered equipment in its vicinity;

    d. Failed to equip on-site frac tanks with overflow or capacity alarms;

    e. Inadequately warned, if, in fact, they warned at all, persons such as Plaintiffs of the potential fire dangers of condensate;

  f. Did not recommend methods to improve the work environment;

  g. Failed to establish a hot work zone in an area surrounding frac tanks;

  h. Failed to warn or mandate the use of only spark-proof equipment or machinery near the frac tanks;

  i. Failed to monitor frac tanks for overfilling, sloshing, or splashing potential;

  j. Failed to connect overflow tanks to frac tanks;

  k. Failed to provide Austin Montgomery or Brent Morrow with a personal combustible gas monitor;

  l. Failed to inspect and test liquids covering portions of the ground on site before directing the liquids be cleaned up or removed;

  m. Failed to investigate the premises for latent or patent defects;

  n. Failed to take any measures to investigate, care for, or ensure the health of workers Injured by dangerous conditions on the premises.

19. EQT's and its employees, operator agents, or representative's acts and omissions as outlined above directly or proximately caused the explosion and Plaintiffs' injuries. EQT breached its duty to provide a safe work site, and it failed to comply with state and federal regulations concerning a safe work site.

20. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## THIRD CAUSE OF ACTION
### NEGLIGENT HIRING, TRAINING AND/OR SUPERVISION

21.     Plaintiffs incorporate by reference the foregoing paragraphs as though they are fully set forth herein.

22.     That Defendant herein hired, retained and otherwise employed individuals supervisors, agents and servants in order to perform its obligation and duties at the Oxford #127 site.

23.     That Defendant herein had a duty to hire employees, supervisors, agents and servants that were competent and who would otherwise perform their job functions and assignments in a reasonably safe manner and a duty to properly and adequately train its employees, supervisors, agents and servants in the proper and safe manner in which to perform their functions and assignments.

24.     That Defendant was negligent in that it hired, retained and/or otherwise employed employees, supervisors, agents and servants that were untrained, incompetent, unsafe, careless, reckless and who otherwise acted in an unreasonable and unsafe manner in the performance of their job functions and assignments, including but not limited to, their identification, handling, storage, and removal of hazardous condensate.

25.     That Defendant was negligent in that it failed to properly train, inform, equip and monitor and supervise the activities of its employees, supervisors, agents and servants who were working in and/or around the Oxford Well Pad.

26.     That the transportation, removal, and/or handling of condensate by Defendant, its' employees, supervisors, agents and servants was done in such a negligent and irresponsible manners.

27.     As a direct and proximate result of the Defendant EQT's negligent hiring, training and/or supervision of its employees, supervisors, agents and servants, Plaintiffs

were, unbeknownst to them, placed in an ultrahazardous situation of removing condensate from the ground with a ignition start pump resulting in the explosion and their injuries.

28. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## VIOLATION OF APPLICABLE FEDERAL, STATE AND/OR
## LOCAL STATUTES, ORDINANCES AND REGULATIONS

29. Plaintiffs by reference the foregoing paragraphs as though they are fully set forth herein.

30. That during all times material and relevant herein, there were in full force and effect numerous federal, state and/or local statutes, ordinances and/or regulations which governed and regulated the activities of defendant EQT, their employees, agents and/or servants.

31. That Defendant, their employees, agents and/or servants, violated said federal, state and/or local statutes, ordinances and/or regulations.

32. Plaitniffs, as workers lawfully on the premises of Defendant was within a class of individuals for whom said statutes, ordinances and/or regulations were designed to protect and safeguard as outlined in West Virginia Code 22-6-27 and other portions of the West Virginia Code designed to protect workers in the gas and oil industry.

33. That in violating said statutes, ordinances, and/or regulations Defendant and their employees, agents and/or servants were negligent per se.

34. That the injuries suffered by Plaintiffs were a foreseeable, direct and

proximate result of the violations stated herein.

35. As a direct and proximate result of the violation of federal, state and or local statutes and/or ordinances, Plaintiffs were placed in contact with highly flammable condensate, as a consequence of which, through no fault of his own, they were severely injured, disabled and damaged.

36. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## DAMAGES

37. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

38. As a result of their burns, Plaintiffs are forced to obtain regular and ongoing medical treatments, and to incur medical expenses by way of doctor, hospital, and pharmacy bills. Plaintiffs seek recovery for both past and future medical expenses related to this action.

39. Both Plaintiffs suffer from extreme nervousness and mental anguish as a direct result of their burns.

40. As a direct and proximate result of his aforesaid injuries, Plaintiffs' enjoyment of life has been greatly impaired.

41. Plaintiffs have suffered severe conscious physical pain and suffering along with disfigurement.

42. As a direct and proximate result of his injuries, Plaintiffs have suffered lost past and future earnings that will likely impair earnings for the remainder of their lives.

43.     Plaintiffs claim punitive damages of all defendant for its reckless, wanton, malicious and willful conduct as outlined in the first four counts and incorporated herein and Defendant's total disregard for the health and safety of Plaintiffs as explained fully above in the first four causes of action and incorporated herein.

44.     WHEREFORE, Plaintiffs verily believe they are entitled to actual damages against Defendant, by reason of said negligence, gross negligence, premise liability and other breaches of duty as alleged herein proximately caused by the fault of the Defendant, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## PUNITIVE DAMAGES

45.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

46.     As a result of the willful, wanton and gross misconduct and gross negligence of EQT as alleged herein, Plaintiffs seek and request punitive or exemplary damages. Defendant EQT and Plaintiffs' employer (excluding Plaintiffs or their peer co-workers) knew that condensate was present at the well pad and EQT had previously hired a specialty company trained in handling such liquids to remove hazardous liquids from the well site, yet EQT and Plaintiffs' employers directed Plaintiffs to remove the liquids despite inadequate training and despite such work being beyond the scope of their responsibilities.  Defendant's malicious and outrageous disregard for the safety of lawful workers on its premises, including Plaintiffs, that include but is not limited to their intentional concealment of the dangers of condensate that EQT, its employees or agents knew of yet consciously refused to warn workers of those dangers evidences a conscious

indifference to the safety and health of users and bystanders.

47. By way of example and to punish Defendant, Plaintiffs therefore seek punitive damages according to proof.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant for all damages incurred, including actual, special and punitive damages in amounts to be determined by the trier of fact, and, in addition, costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

        THE NEMEROFF LAW FIRM
        A Professional Corporation

By: _____
        R. Scott Marshall, Esquire
        WV Bar No. 7745
        Attorney for Plaintiffs

        THE NEMEROFF LAW FIRM
        A Professional Corporation
        2626 Cole Ave., Suite 450
        Dallas, Texas 75204
        (214) 774-2258 phone
        (214) 393-7897 fax

Date: 08/28/2013

## **DEFENDANT SERVICE LIST**

EQT Production Company
CT CORPORATION
5400 D BIG TYLER ROAD
CHARLESTON, WV, 25313